UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

SANDRA MORRISON ALLEN,
STEPHEN ALLEN SR., REV.

              Plaintiffs,

-against-

JOHN MATTINGLY, Commissioner of ACS;
DEITRE REYNOLDS, Director of Mercy First
Foster Care; STUART ALTMAN, Esq., Law
Guardian; ERRIN GALVIN, Esq.; JACOB
PERLMUTTER, Esq.; EVELYN TURNER;
DR. GAUCHMAN, LONG ISLAND JEWISH
MEDICAL CENTER; DR. DEBRA JENSEN;
DR. SCHNEIDER; ANDREA LOMAX,

              Defendants.
----------------------------------------------------------X

MEMORANDUM
AND ORDER
08-CV-02003 (SJF)(LB)

FEUERSTEIN, United States District Judge:

On May 16, 2008, plaintiffs Sandra Morrison Allen (Sandra) and Stephen Allen (Stephen) (collectively, Plaintiffs), filed the instant action *pro se* challenging the placement of their son in foster care and Sandra's involuntary confinement for psychiatric evaluation in November 2005, and seeking declaratory relief and compensatory damages. (Complaint [Compl.], at IV). Sandra paid the filing fee. For the reasons set forth below, (1) plaintiffs' claims seeking to regain custody of their son, for damages relating to the placement of their son in foster care, and for a declaration that the placement of their son in foster care violated their constitutional rights, are *sua sponte* dismissed with prejudice for lack of subject matter jurisdiction; (2) Sandra's First Amendment claim relating to her involuntary confinement is dismissed without prejudice; and (3) plaintiffs are directed to obtain counsel for their son within

1

thirty (30) days of the date of this Order or the claims asserted on his behalf will be dismissed without prejudice.

## BACKGROUND[1]

On September 2, 2001, plaintiffs' son, who was just fourteen (14) days old, was injured allegedly after falling from a bed. (Compl., pp. 4, 7-8). On October 12, 2001, the Administration for Children's Services (ACS) commenced a neglect proceeding against plaintiffs, which was subsequently "upgraded" to an abuse proceeding. (Compl., p. 6). On November 9, 2005, plaintiffs' son was placed in foster care "as a result of a head injury he suffered while at home." (Compl., p. 6). According to plaintiffs, "there has not been a final disposition in [the abuse] case," yet their son, who is now "about eight (8) years old," remains in foster care. (Compl., p. 6). Plaintiffs further allege that their son has been inexplicably transferred among at least six (6) foster homes without explanation and has sustained injuries while in foster care, for which no explanations have been provided. (Compl., pp. 4, 8-9).

Also on November 9, 2005, Sandra was arrested allegedly for "praying in the [New York State Family Court] hallway with members from her church," and was involuntarily confined for psychiatric evaluation for two (2) weeks. (Compl., pp. 6, 7).

Plaintiffs bring this action (1) to regain custody of their son, (2) for damages based upon the alleged injuries and emotional distress he has suffered while in various foster homes, and (3) to "punish the State of New York" for the involuntary commitment of Sandra for a psychiatric

---

[1] This background information was extracted from the complaint and the document entitled "Legal Arguments" attached thereto and does not constitute findings of fact by the Court.

evaluation. Plaintiffs also seek a judgment declaring (1) that their son's constitutional rights have been violated by his continued care and placement in foster care, (Compl., p. 5); and (2) that Sandra's First Amendment right to practice her religion was violated when the state Family Court judge had her arrested and involuntarily committed for psychiatric evaluation for two (2) weeks, (Compl., pp. 7-8).

## DISCUSSION

I.  Standard of Review

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers ... .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983). Furthermore, a district court may dismiss a fee-paid complaint *sua sponte* when an action is frivolous. See Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee).

II. Claims Asserted on behalf of Minor Son

Initially, plaintiffs lack standing to bring individual claims to recover for alleged

3

violations of their son's constitutional rights. See Rodenhouse v. Palmyra-Macedon Central School Dist., No. 07-CV-6438, 2008 WL 2331314, at * 3 (W.D.N.Y. June 3, 2008); Phillips v. City of New York, 453 F.Supp.2d 690, 734 (S.D.N.Y. 2006); Morgan v. City of New York, 166 F.Supp.2d 817, 819 (S.D.N.Y. 2001). Accordingly, plaintiffs' individual claims to recover damages for injuries allegedly sustained by their son while he was in foster care and for judgment declaring that their son's constitutional rights were violated by his continued care and placement in foster care are dismissed with prejudice.

To the extent plaintiffs are seeking relief on behalf of their son, those claims are dismissed without prejudice. Generally, a parent who is not admitted to the bar cannot maintain an action *pro se* in federal court on behalf of his or her child. Tindall v. Poultney High School District, 414 F.3d 281, 284 (2d Cir. 2005); see also Wenger v. Canastota Central School District, 146 F.3d 123, 124 (2d Cir. 1998) (holding that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child). "The choice to appear *pro se* is not a true choice for minors who under state law, see Fed.R.Civ.P. 17(b), cannot determine their own legal actions." Tindall, 414 F.3d at 284 (citing Cheung v. Youth Orchestra Foundation of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990)). District courts have a duty to enforce the rule against *pro se* representation of a child by his or her non-attorney parent *sua sponte* because "[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." Wenger, 146 F.3d at 125 (citing Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997)); see also Fayemi v. Bureau of Immigration and Custom Enforcement, No. CV-04-1935, 2004 WL 1161532, at * 1 (holding that when it is apparent that a lay person is suing on behalf of a minor,

the district court has a duty to protect the child by enforcing, *sua sponte*, the prohibition against unauthorized representation).

When appropriate, the district court may appoint counsel to represent a minor child whose parent or guardian has commenced a *pro se* action on his or her behalf. Fayemi, 2004 WL 1161532, at * 2. "The determination as to whether or not to appoint counsel must be made before deciding any other issues in the case. * * * If the district court declines to appoint counsel and if the non-attorney parent is unable to retain counsel, the complaint should be dismissed without prejudice." Fayemi, 2004 WL 1161532, at * 2.

There is no right to have counsel appointed in a civil case. See Fayemi, 2004 WL 1161532, at * 2. 28 U.S.C. § 1915(e)(1) provides that a "court *may* request an attorney to represent any person unable to afford counsel." (Emphasis added). Courts possess broad discretion when determining whether appointment of counsel for civil litigants is appropriate, "subject to the requirement that it be 'guided by sound legal principle.'" Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983)). When deciding whether to assign counsel to an indigent civil litigant under 28 U.S.C. § 1915(e)(1) the threshold inquiry is whether there is substance to the litigant's position. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001); see also Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)(holding that the district judge should first determine whether the indigent's position seems likely to be of substance). "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." Carmona, 243 F.3d at 632.

If the Court finds that the plaintiff's claim is of substance, it should next consider the

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61-62; see also Carmona, 243 F.3d at 632 (holding that only after an initial finding that a claim is likely one of substance should the court consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute). However, those factors are not restrictive and "[e]ach case must be decided on its own facts." Hodge, 802 F.2d at 61. Moreover,

> "in determining whether appointment of counsel is necessary in a case involving a party who is unable to represent himself because he is a minor or it otherwise incompetent, the court should consider the fact that, without appointment of counsel, the case will not go forward at all. Of course, this does not mean that appointment of counsel is required when it is clear that no substantial claim might be brought on behalf of such a party. But the fact that the party has no means of asserting his rights other than through counsel is certainly a factor that must be considered."

Wenger, 146 F.3d at 125.

Although it is unlikely that the claims asserted on behalf of plaintiffs' son will go forward absent the appointment of counsel, the claims asserted on his behalf do not appear to be "of substance." For example, the claims on behalf of plaintiffs' son which assert constitutional violations must be construed as being brought pursuant to 42 U.S.C. § 1983, see, e.g. Buntin v. City of New York, 395 F.Supp.2d 104, 107-108 (S.D.N.Y. 2005), aff'd, 225 Fed.Appx. 28 (2d

Cir. 2007), since Section 1983 is the mechanism by which individuals may seek redress for alleged violations of constitutional rights, see Gonzaga University v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). However, the Section 1983 claims (1) against Stuart Altman, Esq., as law guardian; Errin Galvin and Jacob Perlmutter, as private attorneys; Drs. Gauchman, Jensen and Schneider; and Long Island Jewish Medical Center (LIJ), a private hospital, would fail because, *inter alia*, those defendants are not state actors for purposes of Section 1983, see, e.g. Puletti v. Patel, No. 05 CV 2293, 2006 WL 2010809, at * 6 (E.D.N.Y. July 14, 2006) (finding that the law guardian and private attorney were not state actors); Estes El v. Long Island Jewish Medical Center, No. 95 Civ. 1047, 1995 WL 217545, at * 1 (S.D.N.Y. Apr. 12, 1995) (finding that LIJ, a private hospital, and its employees were not acting under color of state law for purposes of Section 1983); and (2) against all of the defendants would fail because the complaint does not allege the personal involvement of any of the defendants in the purported constitutional violations, see Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir. 2004). Likewise, ACS is not a suable entity and, thus, this Court lacks jurisdiction over plaintiffs' claims against John Mattingly, in his official capacity as Commissioner of ACS. See, e.g. Johnson v. New York, No. 04-CV-1070, 2007 WL 764514, at * 5 (E.D.N.Y. Mar. 9, 2007). The other claims on behalf of plaintiffs' son are similarly lacking in substance. Accordingly, I will not appoint counsel on behalf of plaintiffs' son. Plaintiffs are directed to amend their complaint to reflect that the claims to recover damages for injuries allegedly sustained by their son while he was in foster care and for judgment declaring that their son's constitutional rights were violated by his continued care and placement in foster care are asserted on his behalf and to obtain counsel for their son within thirty (30) days of the date of this

Order or the claims asserted on his behalf will be dismissed without prejudice. See, e.g. Wenger, 146 F.3d at 125.

III.   Subject Matter Jurisdiction

Plaintiffs invoke this Court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as its federal question jurisdiction pursuant 28 U.S.C. § 1331. However, the subject matter jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.[2] "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y & H Corp. 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Moreover, "[w]here jurisdiction is lacking . . . dismissal is mandatory." Manway Constr. Co. Inc. v. Housing Authority of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983); see also Fed. R. Civ. P. 12 (h)(3). For the reasons set forth below, this Court lacks subject matter jurisdiction over plaintiffs' individual claims relating to the placement of their son in foster care.

---

[2] Plaintiffs do not, and could not, invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, since there is not complete diversity of citizenship between the parties insofar as Sandra and all of the defendants of alleged to be residents of New York. (Compl., ¶ II).

A.  The Declaratory Judgment Act Claims

"[T]he Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts. * * * Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." Correspondent Services Corp. v. First Equities Corp. of Florida, 442 F.3d 767, 769 (2d Cir. 2006) (citations omitted), cert. denied sub nom Waggoner v. Suisse Sec. Bank and Trust, Ltd., 127 S.Ct. 1329, 167 L.Ed.2d 81 (2007); see also Concerned Citizens of Cohocton Valley, Inc. v. New York States Dept. of Environmental Conservation, 127 F.3d 201, 206 (2d Cir. 1997) (holding that the Declaratory Judgment Act does not enlarge the jurisdiction of federal courts and that a declaratory judgment action must have an independent basis for subject matter jurisdiction). Thus, this Court does not have subject matter jurisdiction over plaintiffs' claims unless there is a basis for federal jurisdiction independent of the Declaratory Judgment Act.

B.  Federal Question Jurisdiction[3]

---

[3] Although the Second Circuit has suggested that the domestic relations exception, pursuant to which federal courts will not exercise jurisdiction over cases involving divorce, alimony or child custody decrees, see Ankenbrandt v. Richards, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), does not divest this Court of subject matter jurisdiction in cases invoking federal question jurisdiction, as opposed to diversity jurisdiction, see Williams v. Lambert, 46 F.3d 1275, 1283-1284 (2d Cir. 1995), district courts in this Circuit continue to apply the domestic relations exception to cases invoking federal question jurisdiction. See, e.g. Puletti, 2006 WL 2010809, at * 4; Ellis v. Little Flower Children's Services, No. CV 99-0503, 2000 WL 516887, at * 4 (E.D.N.Y. Mar. 1, 2000) (applying the domestic relations exception in a case invoking federal question jurisdiction, stating that "while noting that the [domestic relations] exception applied most plainly in cases where diversity jurisdiction was invoked, the [Supreme] Court [in Ankenbrandt] cited approvingly to In re Burrus, 136 U.S. 586 (1890), in which the Court dismissed a habeas corpus challenge to a state award of custody.") It is unnecessary to resolve this issue, however, since the Rooker-Feldman doctrine provides an independent basis for dismissal for lack of subject matter jurisdiction of plaintiffs' claims seeking to regain custody of

28 U.S.C. § 1331, which provides the basis for federal question jurisdiction, states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The "well-pleaded complaint" rule determines whether an action arises under the Constitution, laws, or treaties of the United States. See, Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Pursuant to the "well-pleaded complaint" rule,

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, * * * must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."

Id. at 10, 103 S.Ct. 2841 (citing Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed.2d 1218 [1914]). "A right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Id. at 10-11, 103 S.Ct. 2841. Moreover, even in cases in which state law creates the plaintiff's causes of action, the case "might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Id. at 13, 103 S.Ct. 2841. In other words, federal courts have original federal question jurisdiction only where the well-pleaded complaint establishes either (1) that federal law creates the cause of action; or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

---

their son, damages for the placement of their son in foster care and judgment declaring that the placement of their son in foster care violated their constitutional rights.

law. Id. at 27-28, 103 S.Ct. 2841.

1. The Rooker-Feldman Doctrine

Pursuant to what is commonly known as the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are, in substance, appeals from state-court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-415, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Rooker-Feldman doctrine bars challenges in federal court to the substance of state-court decisions which are more properly raised on appeal, even where such challenges appear to raise questions of federal law on their face, i.e. by challenging the state-court judgment on due process grounds. See Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2d Cir. 2005); Mareno v. Dime Savings Bank of New York, 421 F.Supp.2d 722, 726 (S.D.N.Y. 2006).

The Supreme Court has narrowed the Rooker-Feldman doctrine and limited its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); see also Lance v. Dennis, 546 U.S. 459, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)(emphasizing the narrowness of the Rooker-Feldman rule); McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007), cert. denied, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008) (holding that the Rooker-Feldman doctrine is meant to occupy "narrow ground," as evidenced by the fact that the Supreme Court has only applied the doctrine twice–in

the two cases after which the doctrine was named). There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject that state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the district court proceedings. Hoblock, 422 F.3d at 85. The first and fourth requirements are "procedural," while the second and third requirements are "substantive." Id.

The Rooker-Feldman doctrine applies not only to claims that were directly addressed in prior state court proceedings, but to claims that are "inextricably intertwined" with a prior state court determination. Feldman, 460 U.S. at 483-84 n. 16. The Supreme Court has provided "little guidance in determining when claims are 'inextricably intertwined,'" Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002), leaving the Second Circuit and other federal courts "struggl[ing] to define Rooker-Feldman's reach." Hoblock, 422 F.3d at 84. "[T]he phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in Exxon Mobil." Id. at 87. Since the Supreme Court's decision in Exxon Mobil, claims that only collaterally attack a state court judgment are not barred under the Rooker-Feldman doctrine. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon Mobil, 125 S.Ct. at 1527 (internal quotations and citation omitted).

With respect to plaintiffs' claims, asserted on their own behalf, relating to the custody of

their son, all four factors for the application of the Rooker- Feldman doctrine are satisfied: (1) plaintiffs lost custody of their son in state court, (2) they complain of injury caused by the state court order placing their child in foster care; (3) their claims seeking to regain custody of their son, damages for the placement of their son in foster care, and judgment declaring that their constitutional rights were violated by the placement of their son in foster care invites this Court to review and reject the state court determination to place their son in custody; and (4) the state court determination to place their child in foster care was rendered prior to the commencement of this action. As the Second Circuit stated in Hoblock:

> Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading-by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not. In the child-custody example ..., if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child. The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.

Hoblock, 422 F.3d at 88. Accordingly, the Rooker-Feldman doctrine divests this Court of subject matter jurisdiction to hear plaintiffs' individual claims relating to the custody of their son and the placement of their son in foster care. See, e.g. Phifer, 289 F.3d at 57 (holding that the plaintiff's claims seeking an order directing ACS to return plaintiff's child to her custody were barred by the Rooker-Feldman doctrine); Johnson v. Queens Admin. for Children's Services, No. 02-CV-4497, 2006 WL 229905, at * 3, n. 2 (E.D.N.Y. Jan. 31, 2006) (finding that pursuant to the Rooker-Feldman doctrine, the Court lacked subject matter jurisdiction to address issues dealing with child custody, neglect and visitation), aff'd, 197 Fed. Appx. 33 (2d Cir. Sept. 6, 2006);

Puletti, 2006 WL 2010809, at * 5 (finding that the plaintiff's claims alleging constitutional violations stemming from the defendants reducing his custody time with his son during a state court proceeding were barred by the Rooker-Feldman doctrine because they were nothing more than an attempt to have the federal court overturn the custody arrangement entered into in state court); Ellis, 2000 WL 516887, at * 5 (finding that any award of damages on plaintiff's claim challenging the transfer of her children from her custody to that of the defendant adoption agency would require the district court to find that the state court wrongly decided the custody issues before it, and, thus, that claim was barred by the Rooker-Feldman doctrine).

Since the only claims asserted by plaintiff Stephen Allen, Sr. relate to the custody of his son, and the placement of his son in foster care, his claims are dismissed in their entirety with prejudice for lack of subject matter jurisdiction.

### 2. Sandra's Claims Regarding her Involuntary Confinement

Although Sandra's First Amendment claim regarding her involuntary confinement on November 9, 2005, was previously raised, or could have been raised, in an action previously commenced by Sandra in the United States District Court for the Southern District of New York entitled Morrison v. City of New York, No. 06 Civ. 7608, 2008 WL 458728, at * 5 (S.D.N.Y. Feb. 20, 2008), the Southern District dismissed the action for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. Id. at * 5-6. Since "a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits," St. Pierre v. Dyer, 208 F.3d 394, 400 (2d Cir. 2000), Sandra's First Amendment claim is not barred by the doctrine of res judicata. It cannot be determined on the face of the complaint whether Sandra's claim are, in fact, barred by

the Rooker-Feldman doctrine, as found by the Southern District. Accordingly, I make no determination regarding subject matter jurisdiction over Sandra's First Amendment claim at this time.

However, as noted above, plaintiff's First Amendment claim must be construed as being asserted pursuant to 42 U.S.C. § 1983, since that is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. See Gonzaga Univ., 536 U.S. at 285, 122 S.Ct. 2268. Although "a claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right," Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir. 1983), it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(internal quotations and citation omitted); see Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997). A complaint based on a violation under section 1983 that does not allege the personal involvement of a defendant is "fatally defective on its face." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted); see also Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989).

Sandra fails to allege any personal involvement by any of the named defendants in her complaint. Indeed, other than naming the defendants in the caption of the complaint, Sandra makes no reference to them in the body of her complaint.

Moreover, in order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a deprivation of constitutional rights "under color of state law." See, Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Sykes v. James, 13 F.3d 515, 519

(2d Cir. 1993). Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted). Sandra does not name any state official as a defendant in this case.

However, liability under §1983 may be imposed upon private individuals who are not state actors (1) if there exists a "sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself" (the "close nexus/joint action" test); (2) when the State "has exercised coercive power or had provided such significant encouragement, either overt or covert," that the action of the private entity must be deemed that of the State (the "state compulsion" test); or (3) where the private entity "has exercised powers that are traditionally the exclusive prerogative of the State" (the "public function" test). Blum v. Yaretsky, 457 U.S. 991, 1004-1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)(internal quotations and citations omitted). Sandra has alleged no facts in the complaint indicating that any of the named defendants can be deemed to be state actors under any of those tests.

In the absence of a cognizable Section 1983 claim, Sandra does not have an appropriate mechanism by which to pursue her First Amendment claim. Since there is no basis for federal question jurisdiction, her claims under the Declaratory Judgment Act must be dismissed as well. Accordingly, the complaint is dismissed sua sponte without prejudice.

16

a.   Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. A district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). Although it is likely that this Court lacks subject matter jurisdiction over Sandra's claims relating to her involuntarily confinement on November 9, 2005, in light of the Southern District's dismissal of the exact claims asserted by Sandra as barred by the Rooker-Feldman doctrine, since subject matter jurisdiction cannot be ascertained at this time, Sandra is granted leave to amend her complaint to correct the deficiencies stated herein. In the event Sandra asserts a valid Section 1983 claim, she may reassert her claims under the Declaratory Judgment Act as well. Sandra must file any amended complaint **within thirty (30) days from the date of this Order** or her complaint will be deemed dismissed with prejudice.

## CONCLUSION

For the reasons stated above, (1) plaintiffs' individual claims seeking to regain custody of their son, for damages relating to the placement of their son in foster care, and for a declaration that the placement of their son in foster care violated their constitutional rights, are *sua sponte* dismissed with prejudice for lack of subject matter jurisdiction; (2) Sandra's First Amendment claim relating to her involuntary confinement is dismissed without prejudice and with leave to

17

amend within thirty (30) days from the date of this Order; (3) plaintiffs are directed to amend their complaint to reflect that the claims to recover damages for injuries allegedly sustained by their son while he was in foster care and for judgment declaring that their son's constitutional rights were violated by his continued care and placement in foster care are asserted on his behalf and to obtain counsel for their son within thirty (30) days of the date of this Order or the claims asserted on his behalf will be dismissed without prejudice; and (4) all further proceedings in this action are stayed for thirty (30) days or until plaintiffs have complied with this Order by retaining counsel for their son.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 19, 2008
Central Islip, New York

Copies to:

Sandra Morrison Allen, *pro se*
371 1st Place
Uniondale, New York 11553

Stephen Allen, Sr., *pro se*
141 Sheila Drive
Montego Bay, Jamaica
WI

Callan, Koster, Brady & Brennan, LLP
One Whitehall Street, 1oth Floor
New York, New York 10004